UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


Cheryl Donlon

     v.

Hillsborough County, et al.

Civil No.  18-cv-549-LM
Opinion No. 2019 DNH 081


# O R D E R

Cheryl Donlon sued Hillsborough County and five of its employees alleging claims arising out of injuries she suffered while in their custody and care.  Defendants Hillsborough County, Xina Barnes, Flavia Martin, Denise Ryan, and Lynda Wheeler ("County Defendants"), move for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) as to all Donlon's claims.[1]  Doc. nos. 12, 12-1.  Donlon objects and moves for leave to amend her complaint (doc. nos. 16-17), to which the County Defendants object (doc. no. 20).  For the following reasons, the court grants in part and denies in part Donlon's motion to amend.  The court will postpone ruling on the motion for judgment on the pleadings until Donlon files the amended complaint.

---

[1] The sixth defendant, Matthew Masewic, M.D., is represented by separate counsel.  Masewic did not join in the County Defendants' motion.

## STANDARD OF REVIEW

Because allowing Donlon's proposed amended complaint would moot the County Defendants' motion for judgment on the pleadings, the court must first consider Donlon's motion to amend.  See McCusker v. Lakeview Rehab. Ctr., Inc., No. CIV. 03-243-JD, 2003 WL 22143245, at *1 (D.N.H. Sept. 17, 2003); LR 15.1(c) (providing that, when a plaintiff files an amended complaint with leave of the court after the filing of a motion to dismiss for failure to state a claim, the motion to dismiss shall be automatically denied without prejudice).  Under Federal Rule of Civil Procedure 15(a), the court should freely give leave to amend "when justice so requires."  This liberal standard does not mean that every request for leave to amend should be granted.  See Manning v. Boston Med. Ctr. Corp., 725 F.3d 34, 60 (1st Cir. 2013).  Rather, a court may deny a request for leave to amend when "the request is characterized by undue delay, bad faith, futility, or the absence of due diligence on the movant's part."  Id. at 61 (internal quotation marks and brackets omitted).

The County Defendants object to the requested amendment in part on futility grounds.  A "futile" amendment is one that "would fail to state a claim upon which relief could be granted."  Glassman v. Computervision Corp., 90 F.3d 617, 623

(1st Cir. 1996).  When, as here, a plaintiff files a motion to amend in response to a motion to dismiss and discovery is not yet complete, the futility inquiry mirrors the analysis applied under Federal Rule of Civil Procedure 12(b)(6).  Id.  That is, the court applies the same standard in considering whether a motion to amend is futile as it does when deciding a motion to dismiss for failure to state a claim.  See id.

Under Rule 12(b)(6), the court must accept the factual allegations in the complaint as true, draw all reasonable inferences from those facts in the plaintiff's favor, and "determine whether the factual allegations in the plaintiff's complaint set forth a plausible claim upon which relief may be granted." Foley v. Wells Fargo Bank, N.A., 772 F.3d 63, 71, 75 (1st Cir. 2014) (internal quotation marks omitted).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).


## BACKGROUND

The following facts are derived from Donlon's proposed amended complaint (doc. no. 17-1), which provides slightly more detail than the original complaint (doc. no. 1).  Donlon was

3

incarcerated as a pre-trial detainee at the Hillsborough County
House of Corrections, also known as the Valley Street Jail
("Jail"), from July 11 to August 8, 2015.  Hillsborough County
operates the Jail.  Defendants Barnes, Martin, Ryan, and Wheeler
were all employees of Hillsborough County and worked as medical
care personnel at the Jail during the time Donlon was detained
there.  Defendant Masewic also worked at the Jail during that
time as a medical doctor pursuant to a contract with
Hillsborough County.

Prior to Donlon's detention, she was diagnosed with "major
depression disorder[,] generalized anxiety disorder, and
borderline personality disorder."  Doc. no. 17-1 at 3.  Upon her
arrival to the Jail on July 11, medical personnel evaluated
Donlon and learned that she experienced depression and anxiety
and that she took several medications prior to being detained,
including Xanax.  Medical personnel then prescribed Donlon
several medications, but not Xanax.  Xanax falls within a class
of drugs known as benzodiazepines.  Medical staff also did not
prescribe Donlon an alternative benzodiazepine, or anything to
treat her for benzodiazepine withdrawal.

On July 16, Donlon complained to medical staff that she was
experiencing increased anxiety, lack of sleep, and sweats, which
are well-known signs of withdrawal.  Medical personnel altered

her prescriptions slightly but did not add anything to address benzodiazepine withdrawal.  On July 18, Donlon again complained of these symptoms and requested that she be put back on Xanax. Over the following week, there were several incidents during which medical and correctional staff observed Donlon to be disorientated, belligerent, uncooperative, and unable to control her bowels.

On July 27, correctional officers found Donlon naked in her cell with feces spread throughout the cell.  The officers observed that Donlon appeared delirious and was unable to comply with their demands.  The officers physically subdued her using pepper spray and strapped her into a restraint chair, which caused five of her ribs to fracture.  That same day, medical staff entered a note stating that Donlon may have had "delirium due to prolong[ed] benzodiazepine . . . withdrawal."  Doc. no. 17-1 at ¶ 23.  Medical staff then ordered blood work, which revealed that Donlon was experiencing kidney failure.

On July 29, the Jail transferred Donlon to Elliot Hospital for emergency medical care.  The hospital records demonstrate that Donlon "gradually returned to baseline after treatment for benzodiazepine withdrawal and dehydration."  Id. at ¶ 32.  She was discharged with a prescription for Klonopin, a long-acting benzodiazepine.

In June 2018, Donlon filed this suit asserting five claims based on her allegations that defendants caused her to suffer withdrawal from Xanax, failed to recognize her symptoms of withdrawal, and failed to administer proper treatment. Count I alleges a civil rights claim under 42 U.S.C. § 1983 and the Fourteenth Amendment against all of the individually named defendants stating that they acted with deliberate indifference in failing to provide her adequate medical care. Count II asserts a civil rights claim under 42 U.S.C. § 1983 and the Fourteenth Amendment against Hillsborough County, alleging that it had de facto policies that resulted in the provision of inadequate medical care to Donlon. Count III asserts that Hillsborough County discriminated against Donlon in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 et seq., and the Rehabilitation Act, 29 U.S.C. § 794. Count IV alleges a negligence claim against Hillsborough County and Count V asserts that Hillsborough County is vicariously liable for the misconduct of its employees.[2] The complaint also references a violation of Donlon's rights under the Fourth and Eighth Amendments to the United States Constitution as well as "rights

---

[2] This last count is titled Count "VIII," but this appears to be a scrivener's error.

secured under the laws and constitution of the State of New Hampshire."  Doc. no. 1 at ¶ 1.  Donlon requests compensatory and punitive damages, equitable relief, and an award of attorney's fees and costs.

The County Defendants moved for judgment on the pleadings. Donlon objected and moved to amend her complaint, asserting that the amendment was aimed at curing the deficiencies highlighted by the County Defendants.  The amended complaint asserts largely the same claims as the original complaint with some alterations and additions.  Count I remains essentially the same.  Donlon changed the title of Count II to a "Monell" claim and added allegations that Hillsborough County knew of its employees' unconstitutional conduct and failed to discipline them, which reinforced the policies leading to Donlon's injuries.  In Count III, Donlon dropped any reference to the Rehabilitation Act. She also modified her ADA claim to assert that Hillsborough County discriminated against her by refusing to allow the reasonable accommodation of prescribing her Xanax.  Finally, the amended complaint combines Counts IV and V into one count of negligence against Hillsborough County on the basis of direct and vicarious liability.  Donlon has dropped all references to the Fourth and Eighth Amendments to the United States Constitution and appears to have removed her request for

equitable relief.  The County Defendants object on futility
grounds to the motion to amend.

## DISCUSSION

As explained above, the court will first address Donlon's
motion to amend.  Donlon asserts that she should be permitted to
amend her complaint because the amended complaint cures the
deficiencies pointed out by the County Defendants in their
motion for judgment on the pleadings.  The County Defendants
raise two objections to her motion to amend: (1) amendment
should be permitted only to the extent that her new claims
"relate back" to the original complaint because the statute of
limitations on her claims has run; and (2) amendment is futile
because the amended complaint still fails to state valid claims
for relief.[3]

---

[3] Although the County Defendants object to the motion to
amend, they assent to specific differences between the complaint
and the amended complaint, including plaintiff's: removal of a
request for injunctive relief and references to the Fourth and
Eighth Amendments, modification of certain headings, and
description of plaintiff as "a pretrial detainee."  See doc. no.
20-1 at 2-3.

I.    <u>Timeliness of Amended Complaint</u>

The County Defendants first argue that, because the statute
of limitations on Donlon's claims had run at the time she moved
to amend, her amended complaint should be allowed only to the
extent that it "relates back" to her original complaint.  The
court agrees that Donlon's claims are time-barred unless they
relate back under Federal Rule of Civil Procedure 15(c).

A three-year statute of limitations applies to all Donlon's
claims.  <u>See</u> Owens v. Okure, 488 U.S. 235, 250-251 (1989)
(holding that § 1983 claims borrow the state statute of
limitations for general personal injury claims); Trovato v. City
of Manchester, N.H., 992 F. Supp. 493, 499 (D.N.H. 1997)
(recognizing that the ADA borrows analogous state statute of
limitations, which is the three-year statute governing personal
actions); New Hampshire Revised Statutes Annotated ("RSA")
§ 508:4, I (providing three-year statute of limitations for all
personal actions).  It is undisputed that the alleged misconduct
occurred between July 11 and August 8, 2015.  Donlon filed her
complaint in June 2018, within the three-year statute of
limitations.  However, she filed her request to amend the
complaint in October 2018, outside of the limitations period.
The claims asserted in the amended complaint are thus time-

barred unless the amended complaint "relates back" to the original complaint under Federal Rule of Civil Procedure 15(c).

The purpose of Rule 15(c) "is to allow a plaintiff to avoid the preclusive effect of a statute of limitations so long as certain conditions are satisfied." Connectu LLC v. Zuckerberg, 522 F.3d 82, 94 (1st Cir. 2008). Under Rule 15(c)(1), an amended complaint adding additional claims relates back to the original complaint if either: "(A) the law that provides the applicable statute of limitations allows relation back"; or "(B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(A)-(B).

Although the County Defendants contend that Donlon's amended complaint should be allowed "only to the extent she is able to relate back the additional facts and theorem," doc. no. 20-1 at 4, defendants do not develop an argument as to why Donlon cannot meet the Rule 15(c) standard. After comparing the complaint with the proposed amended complaint, the court finds that the proposed amended complaint relates back under Rule 15(c)(1)(B).

Relation back is warranted under Rule 15(c)(1)(B) if "the original and amended [complaints] state claims that are tied to

a common core of operative facts." Frederick v. State of N.H., No. 14-CV-403-SM, 2016 WL 4382692, at *7 (D.N.H. Aug. 16, 2016) (quoting Mayle v. Felix, 545 U.S. 644, 664 (2005)) (brackets omitted).  Consequently, courts should focus on whether "the alteration of the original statement is so substantial that it cannot be said that defendant was given adequate notice of the conduct, transaction, or occurrence that forms the basis of the claim or defense . . . ." O'Loughlin v. Nat'l R.R. Passenger Corp., 928 F.2d 24, 26 (1st Cir. 1991) (internal quotation marks omitted).  The court's analysis should be directed to conduct rather than causes of action, and new legal theories may relate back if there is a shared basis in factual circumstances.  See Ornelas v. City of Manchester, No. 14-cv-394-LM, 2017 WL 2423512, at *4 (D.N.H. June 5, 2017).  Applying these principles, courts will typically deny amendments that "assert a claim which was not even suggested in the original complaint," but routinely permit amendments that "merely make[] more specific what has already been alleged."  Id. (internal quotation marks omitted).

The claims asserted in both the original complaint and the proposed amended complaint plainly arise out of a common core of operative facts: Jail medical staff's treatment, or lack thereof, of Donlon's purported benzodiazepine withdrawal.

11

Further, the proposed amended complaint does not add any new claims.  Rather, the amendment aims to refine and clarify the counts previously alleged and bolster those claims with additional facts.  Donlon's theory of relief in Count I remains the same and, as to Counts II, III, and IV, the amended complaint shifts Donlon's theory of relief minimally.  The court concludes that the original complaint put the County Defendants on notice of the operative facts and alleged misconduct underlying the claims in the amended complaint.  Donlon's amended claims therefore properly relate back to the original complaint under Rule 15(c)(1)(B) and are not time-barred.

II.  <u>Futility</u>

Next, the County Defendants argue that Donlon should not be permitted to amend her complaint because any amendment is futile.  They assert that, even with the added material, Donlon's amended complaint fails to state claims upon which relief may be granted.  <u>See</u> doc. no. 20-1 at 8-15.  The court discusses each claim below.[4]

---

[4] The County Defendants also object to the addition or modification of several paragraphs in the "Facts" section of the proposed amended complaint.  Doc. no. 20-1 at 8-9. The court permits the proposed amendments to the "Facts" section of the amended complaint.

A. Section 1983 Claim against Individual Defendants

In Count I of the proposed amended complaint, Donlon alleges that certain Jail medical staff violated her constitutional rights through their deliberate indifference to her serious medical condition—benzodiazepine withdrawal. Specifically, she alleges that nurses Ryan, Martin, Barnes, and Wheeler "individually and collectively" responded with deliberate indifference to her "life-threatening" withdrawal from Xanax by failing to adequately monitor, treat, and promptly obtain emergency medical care for her. Doc. no. 17-1 at ¶ 55, 59.

Section 1983 "creates a remedy for violations of federal rights committed by persons acting under color of state law." Sanchez v. Pereira-Castillo, 590 F.3d 31, 40 (1st Cir. 2009) (internal quotation marks omitted). The statute provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. A claim under § 1983 consists of three elements: "deprivation of a right, a causal connection between

13

the actor and the deprivation, and state action." Sanchez, 590 F.3d at 40.  As to the first element, Donlon claims that her right to due process under the Fourteenth Amendment was violated by the deliberate indifference of Jail medical staff to her benzodiazepine withdrawal.

"A state and its subdivisions are under a substantive obligation imposed by the Due Process Clause of the Fourteenth Amendment to refrain . . . from treating a pretrial detainee with deliberate indifference to a substantial risk of serious harm to health." Coscia v. Town of Pembroke, Mass., 659 F.3d 37, 39 (1st Cir. 2011); see also Burrell v. Hampshire Cty., 307 F.3d 1, 7 (1st Cir. 2002) (recognizing that claims of deliberate indifference by pretrial detainees are governed by the same standard applied to prisoners under the Eighth Amendment).  A claim that a state actor treated a pretrial detainee's serious medical condition with deliberate indifference has two components: one objective and one subjective.  See Zingg v. Groblewski, 907 F.3d 630, 635 (1st Cir. 2018).  As to the objective component, the plaintiff must show that she had "a medical need that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Id. (internal quotation marks omitted).  Second, she must

establish that defendants subjectively "possessed a sufficiently culpable state of mind" when treating her.  Id.  Evidence demonstrating the requisite state of mind may take many forms, including evidence that a defendant had actual knowledge of an easily preventable impending harm, but failed to take action that would have averted the harm.  See id.

The County Defendants argue that Count I is deficient in that it fails to set out specific misconduct attributable to each named nurse.  See doc. nos. 20-1 at 10.  The defendants assert that, although Donlon alleges wrongdoing by the medical staff in general, she does not particularize her allegations with misconduct attributable to each individual.  Donlon does not respond to this specific argument.  See doc. nos. 16-17. The court agrees with defendants that the allegations are insufficient.

A complaint must "give the defendant fair notice of what the claim is and the grounds upon which it rests."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (ellipsis omitted). This requirement is typically met when the allegations identify each defendant's role in the wrongdoing or what each defendant allegedly did to wrong the plaintiff.  See, e.g., Cordell v. Howard, 879 F. Supp. 2d 145, 156 (D. Mass. 2012) (finding sufficient facts alleged to state claim of deliberate

indifference where plaintiff described each defendant's role in the unconstitutional conduct).

In their motion for judgment on the pleadings, the County Defendants raise the same argument: that Count I must be dismissed because it fails to give each individual nurse notice of the specific allegations against her. Doc. no. 12-1 at 3-4. Thus, despite having notice of this argument, Donlon did nothing to cure this deficiency in the proposed amended complaint. The proposed amended complaint alleges that the nurses, along with others, were "responsible for providing skilled nursing care to the inmates at" the Jail, including Donlon. Doc. no. 17-1 at ¶ 11, 55. It further makes general allegations of misconduct, such as the "defendants and other medical staff" were aware Donlon was suffering a serious medical condition, and "defendants" failed to adequately monitor her. Id. at ¶¶ 57-58. But there are no allegations regarding any specific interactions, observations, evaluations, or medical care each individual nurse provided, or failed to provide, to Donlon.[5]

_____

[5] This lack of specificity as to each nurse's conduct stands in contrast to Donlon's allegations against Masewic. Donlon alleges that: Masewic received multiple requests from other medical staff to address Donlon's withdrawal symptoms; he examined Donlon on at least three occasions; Donlon "begged" him to allow her to resume taking Xanax; and he was later advised of her worsening condition but did nothing to address her withdrawal symptoms. Doc. no. 17-1 at ¶¶ 47-48.

Donlon's general allegations are insufficient to put each individual nurse on notice of the specific conduct underlying the claims against her. See Andreozzi v. Grondolsky, No. CIV.A. 11-11813-RWZ, 2013 WL 3984593, at *4 (D. Mass. Aug. 2, 2013) (granting motion to dismiss deliberate indifference claim where pleadings made it "difficult to identify what each defendant ha[d] allegedly done with respect to [plaintiff's] medical treatment and how it harmed him"). The proposed amended complaint also fails to set out facts underlying the subjective component of a deliberate indifference claim: the requisite culpable state of mind. See Zingg, 907 F.3d at 635. There are no factual allegations particular to each defendant demonstrating, for example, that each person had knowledge of Donlon's condition and knew that it was easily preventable but did nothing.[6] Accordingly, as amendment of Count I would be futile, Donlon's motion to amend as to that Count is denied.[7]

---

[6] Because Donlon is represented by counsel, she is not entitled to the "latitude" afforded to pro se parties. Cf. White v. Ortiz, No. 13-CV-251-SM, 2015 WL 5331279, at *5 (D.N.H. Sept. 14, 2015) ("Additionally, it probably bears noting that [plaintiff] is proceeding pro se and is, therefore, entitled to a bit more latitude than a party who is represented by counsel.").

[7] The County Defendants also contend that amendment of Count I is futile because the nurses are entitled to qualified immunity. Because the court dismisses Count I on futility grounds, the court need not address this argument.

B. Monell Claim against Hillsborough County

In Count II of the proposed amended complaint, Donlon asserts a "Monell" claim against Hillsborough County under 42 U.S.C. § 1983, alleging that the county had certain policies, practices, or customs that caused the deprivation of her constitutional rights. In Monell v. Department of Social Services of City of New York, 436 U.S. 658 (1978), the Supreme Court held that municipalities may be held liable under § 1983 for monetary, declaratory, or injunctive relief, id. at 690. Like natural persons, a municipality or other local government may be liable under § 1983 if it subjects a person to a deprivation of rights or causes a person to be subjected to a deprivation of rights. Connick v. Thompson, 563 U.S. 51, 60 (2011). However, municipalities may only be held responsible for "their own illegal acts." Id. (internal quotation marks and emphasis omitted). They may not be held vicariously liable for their employees' misconduct. Id.

To prove a Monell claim, a plaintiff must show that "action pursuant to official municipal policy caused her injury." Id. (internal quotation marks omitted). "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and

widespread as to practically have the force of law." Id. at 61. While a "policy" originates from a "top-down affirmative decision of a policymaker," a more informal custom or practice "develops from the bottom-up." Baron v. Suffolk Cty. Sheriff's Dep't, 402 F.3d 225, 236 (1st Cir. 2005)(internal quotation marks omitted), abrogation on other grounds recognized in Jennings v. Jones, 587 F.3d 430, 438 n.10 (1st Cir. 2009); see also Monell, 436 U.S. at 691 (observing that claim may be based on custom that "has not received formal approval through the [municipal] body's official decisionmaking channels").

When a Monell claim is based on an informal custom or practice, the court must determine whether the custom is "fairly attributable to the municipality." Baron, 402 F.3d at 236. "This standard is met when a custom is so well settled and widespread that the policymaking officials of the municipality can be said to have either actual or constructive knowledge of it yet did nothing to end the practice." Id. at 236-37 (internal quotation marks omitted). In addition to showing that the practice is fairly attributable to the municipality, a plaintiff must show that the practice was "the cause of and the moving force behind the deprivation of constitutional rights." Id. at 237 (internal quotation marks omitted).

In the proposed amended complaint, Donlon alleges that
Hillsborough County had the following de facto policies that
resulted in deliberate indifference to her serious medical
condition: "denying medication that had been legally prescribed"
prior to the inmate's incarceration; "denying inmates needed
medical care and treatment pending approval by the Hillsborough
County Commissioners"; and "denying inmates appropriate
withdrawal medication."  Doc. no. 17-1 at ¶¶ 62-63.  Because
Donlon alleges that "de facto" policies, not an official policy,
caused her harm, the court must consider whether her
allegations, viewed in the light most favorable to her, are
sufficient to show the existence of a custom attributable to the
municipality.  See Baron, 402 F.3d at 236-37.  The County
Defendants argue that her allegations are insufficient to show
the requisite link between the de facto policies and the
municipality.

Accepting all factual allegations as true and drawing all
reasonable inferences in Donlon's favor, there are sufficient
facts in the amended complaint supporting her Monell claim based
on the Jail's alleged custom of denying appropriate withdrawal
medication and treatment.  The proposed amended complaint
alleges that medical staff requested that defendant Masewic
address Donlon's withdrawal symptoms on at least five occasions,

but he refused to do so.  Doc. no. 17-1 at ¶ 47; see Howard v. Wilkinson, 305 F. Supp. 3d 1327, 1336 (M.D. Fla. 2018) (finding complaint plausibly alleged a "custom" supporting municipal liability based on facts that four separate jail nurses visited plaintiff as he lay dying but provided no medical care). Further, the amended complaint alleges that the Jail has received "numerous prior complaints involving inadequate medical care and inattention to inmates, including inadequate care given during drug withdrawal."  Doc. no. 17-1 at ¶ 52.  She also alleges that, after her discharge, Hillsborough County learned of the individual defendants' unconstitutional conduct towards her but failed to discipline its employees, thereby reinforcing the de facto policy.  Though sparse, taken as true and viewed in the light most favorable to Donlon, these facts raise the inference that Hillsborough County policymakers had actual or constructive knowledge of the custom of denying care to inmates for withdrawal from certain drugs, but did nothing to rectify that custom.

Donlon also alleges that this custom caused the harm she suffered.  This allegation is sufficient to allege causation when viewed in light of the facts in the proposed amended complaint that describe Donlon's benzodiazepine withdrawal, lack of treatment, and hospitalization.  Construed generously,

Donlon's proposed amended complaint provides enough facts to state a viable Monell claim. As to Count II, Donlon's motion to amend is allowed.

### C. ADA Claim against Hillsborough County

In Count III of the proposed amended complaint, Donlon asserts that Hillsborough County violated her rights under Title II of the ADA. She contends that she suffered from disabling mental illnesses (major depression, anxiety, and borderline personality disorder), that she requested the accommodation of prescription Xanax to enable her to function, and that Hillsborough County refused her accommodation. Hillsborough County argues that, even as amended, this count fails to set out all the elements of an ADA claim and essentially makes out a claim for inadequate medical treatment, which is not actionable under the ADA.

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. The Supreme Court has held that state and local prisons qualify as "public entities" under the ADA. See Pa. Dep't of

22

Corr. v. Yeskey, 524 U.S. 206, 213 (1998).  A plaintiff seeking relief under Title II  must show "(1) that [s]he is a qualified individual with a disability; (2) that [s]he was excluded from participating in, or denied the benefits of a public entity's services, programs, or activities or was otherwise discriminated against; and (3) that such exclusion, denial of benefits, or discrimination was by reason of [her] disability." Kiman v. N.H. Dep't of Corr., 451 F.3d 274, 283 (1st Cir. 2006) (internal quotation marks omitted).

A plaintiff can pursue several different theories of disability discrimination.  See Nunes v. Mass. Dep't of Corr., 766 F.3d 136, 144-45 (1st Cir. 2014).  Donlon raises an "accommodation" claim here.  Under an accommodation theory, a plaintiff may claim "that a public entity has refused to affirmatively accommodate his or her disability where such accommodation was needed to provide meaningful access to a public service."  Id. at 145 (internal quotation marks omitted).

Donlon has alleged sufficient facts supporting her ADA claim to survive a motion to dismiss.  She alleges that she had several mental impairments—depression, anxiety, and borderline personality disorder—that substantially limited her ability to perform daily tasks, such as taking care of herself.  Doc. no 17-1 at ¶ 8; see Carroll v. Xerox Corp., 294 F.3d 231, 238 (1st

23

Cir. 2002) (explaining that one way to prove disability is to demonstrate a mental or physical impairment that substantially limits one or more of plaintiff's major life activities); 42 U.S.C. § 12102(2)(A) (defining "major life activities" as including "caring for oneself").  She alleges that she was otherwise qualified to participate in all programs and services at the Jail, including receipt of medical treatment.  Doc. no. 17-1 at 8, 76.

Medical care is "one of the services, programs, or activities covered by the ADA." Kiman, 451 F.3d at 284 (internal quotation marks omitted).  Donlon claims that she was denied the benefits of the Jail's medical care in that medical staff caused her to undergo benzodiazepine withdrawal, refused her requested accommodation of putting her back on Xanax, and failed to treat her in any way for the withdrawal.  Doc. no. 17-1 at ¶¶ 16, 18-27, 40, 47-49.

Finally, Donlon alleges that this denial of medical care was because of her disability.  ADA claims involving medical care "must be framed within some larger theory of disability discrimination." Kiman, 451 F.3d at 284 (internal quotation marks omitted).  Specifically, a plaintiff must show either that: (1) the medical decision or treatment "was so unreasonable . . . as to imply that it was a pretext for some discriminatory

motive;" or (2) that the decision or treatment "was discriminatory on its face, because it rested on stereotypes of the disabled rather than an individualized inquiry into the patient's condition." Id. at 284-85 (internal quotation marks omitted).

The facts alleged raise a plausible inference of such unreasonable care that would imply pretext for a discriminatory motive. Donlon brought her withdrawal symptoms to the attention of medical staff on multiple occasions. Doc. no. 17-1 at ¶¶ 16, 18, 48. Jail staff then observed her acting disoriented, confused, and unable to maintain personal hygiene over the course of the week prior to her hospitalization. Id. at ¶¶ 19-23, 26-27. After Jail staff found Donlon naked and delirious in her cell with feces smeared throughout, they waited two days before transferring her to the hospital. See id. at ¶¶ 25-28.

Additionally, Donlon alleges that defendants' refusal to accommodate her disability was "the result of their perception and stereotyping of her as a woman suffering from a mental disability" rather than the result of "an individualized inquiry into [her] genuine medical needs." Id. at ¶¶ 81, 84. There are some facts in the record to support the notion that defendants negatively stereotyped Donlon because of her disability. Donlon claims that while subduing her, correctional staff "teased her

and ridiculed her" and that Masewic "made light" of the withdrawal symptoms Donlon was suffering.  Id. at ¶¶ 48, 80. Viewed generously, these allegations are sufficient, at this early stage, to state a claim of discrimination under Title II of the ADA.  See Smith v. Aroostook Cty., ___ F. Supp. 3d ___, 2019 WL 1387684, at *9-10, *12 (D. Me. Mar. 27, 2019) (granting preliminary injunction and finding likelihood of success on merits of plaintiff's ADA claim that jail discriminated against her by denying her medication to treat her opioid use disorder and prevent painful withdrawal symptoms), aff'd ___ F.3d ___, 2019 WL 1922847, (1st Cir. Apr. 30, 2019) (per curiam). Donlon's motion to amend as to Count III is allowed.

    D. Negligence Claim against Hillsborough County

In Count IV of the proposed amended complaint, Donlon claims that Hillsborough County should be held directly liable for its negligence and vicariously liable for its employees' negligence in failing to adequately monitor her, treat her for benzodiazepine withdrawal, and promptly obtain her emergency medical care.  Hillsborough County argues that amendment of this claim is futile because, even as amended, such claim is barred by New Hampshire's municipal immunity statute, RSA chapter 507-B.

Under RSA 507-B:5, "[n]o governmental unit shall be held liable in any action to recover for bodily injury, personal injury or property damage except as provided by this chapter or as is provided or may be provided by other statute." A "governmental unit" is "any political subdivision within the state including any county . . . or departments or agencies thereof." RSA 507-B:1, I. The term "personal injury" includes "[a]ny injury to the feelings or reputation of a natural person, including but not limited to . . . mental injury [and] mental anguish." RSA 507-B:1, III(a). And "bodily injury" holds its plain language meaning under the statute. <u>See</u> RSA 507-B:1, II.

Donlon's claims plainly fall within the reach of the municipal immunity statute. First, Hillsborough County, as a political subdivision of the state of New Hampshire, is a "governmental unit." Second, Donlon's claims are for bodily injury and personal injury as defined by RSA 507-B:1. She alleges that, as a result of Hillsborough County's employees' conduct, she "was injured and suffered extreme pain and mental anguish." Doc. no. 17-1 at ¶ 99. Under RSA 507-B:5, Hillsborough County is therefore immune from Donlon's negligence claim unless a specific statutory exception applies. <u>See</u> RSA 507-B:5; <u>Martineau v. Antilus</u>, No. 16-CV-541-LM, 2017 WL 2693491, at *3 (D.N.H. June 22, 2017).

Donlon does not cite any exception to municipal immunity provided in RSA chapter 507-B that would apply to her claim. See, e.g., RSA 507-B:2 (waiving immunity for actions to recover for injuries caused by a governmental unit's "fault or by fault attributable to it, arising out of ownership, occupation, maintenance or operation of all motor vehicles, and all premises"). Nor does she cite an exception to municipal immunity provided by any other statute.

Instead, Donlon appears to argue that granting Hillsborough County immunity would violate her rights under the Equal Protection Clauses of the Federal and State Constitutions. See doc. nos. 17 at 4, 17-1 at ¶¶ 96-97. Donlon cites no authority in support of this argument. To the extent Donlon seeks to raise an equal protection claim, she has done so in a manner that is insufficient and unpersuasive. See Higgins v. New Balance Athletic Shoe, Inc., 194 F.3d 252, 260 (1st Cir. 1999) ("The district court is free to disregard arguments that are not adequately developed . . . ."); Pukt v. Nexgrill Indus., Inc., No. 14-CV-215-JD, 2016 WL 4444719, at *1 n.1 (D.N.H. Aug. 23, 2016) (refusing to consider party's insufficiently developed argument); United States v. $572,204 in U.S. Currency, More or Less, 606 F. Supp. 2d 153, 155 n.1 (D. Mass. 2009) (declining to

address claims raised in motion to suppress but not developed in supporting memorandum).

Donlon has not identified any exception to the municipal immunity granted under RSA 507-B:5. The court concludes that Hillsborough County is immune from Donlon's negligence claims. Donlon's motion to amend Count IV is therefore denied as futile.

## CONCLUSION

For the foregoing reasons, Donlon's motion to amend (doc. no. 17) is granted as to Counts II and III, amendments made to the "Facts" section, and amendments to which the County Defendants assent. The motion to amend is otherwise denied, specifically as to Counts I and IV. On or before May 23, 2019, Donlon shall file an amended complaint that conforms with this order (i.e., asserting Counts II and III, and Count I insofar as it asserts a claim against Masewic). Once the amended complaint is filed, the court will deny as moot the motion for judgment on the pleadings (doc. no. 12).

SO ORDERED.

_____
Landya McCafferty
United States District Judge

May 9, 2019
cc: Counsel of Record

29